UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WRIGHT PORTER, JR.                                        CIVIL ACTION

VERSUS

CAROLYN W. COLVIN, ACTING                    NO.: 12-00768-BAJ-RLB
COMMISSIONER OF SOCIAL
SECURITY

RULING AND ORDER

Plaintiff, Wright Porter, Jr. ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for supplemental security income benefits. (R. Doc. 1).[1]  For the reasons given below, the decision of the Commissioner is **VACATED** and Plaintiff's appeal **REMANDED** for further proceedings consistent with this Order.

## I.   PROCEDURAL HISTORY

On July 7, 2010, Plaintiff filed an application for supplemental security income (SSI), alleging a disability commencing on December 19, 2009 due to back, leg and knee problems. (Tr. 45, 99-106).   After the agency initially denied Plaintiff's application, Plaintiff requested an administrative hearing. (Tr. 45-57, 59).   Plaintiff

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])".   Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

and his attorney attended an administrative hearing before the Administrative Law Judge (ALJ) on August 10, 2011. (Tr. 24-44).

After reviewing the evidence and testimony, the ALJ issued her decision on August 19, 2011, concluding that Plaintiff was not disabled for purposes of the Act. (Tr. 9-20).

Plaintiff requested review of the ALJ's decision. On November 5, 2012, the Appeals Council denied review. (Tr. 1-6). Therefore, the ALJ's decision serves as the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). Plaintiff filed his complaint in federal district court on December 5, 2012, seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (R. Doc. 1).

## II.   STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229

2

(1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).   Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.   ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other

4

work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the ALJ's decision, the ALJ first found that Plaintiff met the insured status requirements of the Act and that Plaintiff had not engaged in substantial gainful activity since his application date of July 7, 2010. (Tr. 14). At the second step, the ALJ found that Plaintiff's degenerative disc disease constituted a severe impairment under the Act. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments. (Tr. 14-15). The ALJ specifically considered Listing 1.04A for disorders of the spine.

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b), except that he can never climb ladders, ropes or scaffolds and can only occasionally stoop, kneel, crouch and crawl. (Tr. 15). The ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 15). At the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work because such work exceeds the limitations of the above referenced RFC. (Tr. 19). The ALJ determined that Plaintiff achieved at least a high school education and could communicate in English, and classified him as a younger individual on his application date, but noted that he subsequently changed age categories to closely-approaching advanced age. (Tr. 19). At the fifth step, based on the aforementioned RFC, and

considering Plaintiff's age, education and work experience, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 19). The ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from the date the application was filed through the date of the decision. (Tr. 20).

## IV.   PLAINTIFF'S ALLEGATIONS OF ERROR AND COMMISSIONER'S RESPONSE

Plaintiff alleges that the ALJ was in error (R. Doc. 11). He argues that the decision to deny benefits should be reversed because a prior ALJ found, based on the same evidence, that Plaintiff had a sedentary RFC. Because the Plaintiff entered an older age category, the Medical Vocation Rules would require that he be found disabled. In order to avoid that result, the ALJ found, without any evidence of improvement and based on the same evidence as the prior decision, that Plaintiff had a light RFC which resulted in a finding of not disabled. Because of the prior sedentary RFC determination, the subsequent light RFC determination is not supported by substantial evidence.

Plaintiff further argues that the ALJ's RFC determination was not supported by substantial evidence because, "independent of the prior sedentary RFC, the light RFC is based on very little evidence." (R. Doc. 11 at 11). Plaintiff states that the ALJ improperly relied on a non-examining state agency physician opinion, grounded in a consultative examination that was considered in the prior decision, and a new consultative examination that revealed a worsening of plaintiff's condition. Finally,

the ALJ's credibility determination based on plaintiff's lack of treatment was also in error.

The Commissioner responds that the ALJ was not bound by the previous ALJ's RFC determination. The Commissioner argues that the prior determination is not material because the agency treats a subsequent disability application involving a non-adjudicated period as a separate determination, requiring an independent evaluation of the facts and evidence. Although the Fourth, Sixth and Ninth Circuits have diverged from this policy resulting in acquiescence rulings to jurisdictions within those Circuits, that is not the law in the Fifth Circuit. The Commissioner also argues that the current case is distinguishable from the non-precedential cases cited by Plaintiff because the record contains new evidence which supports the ALJ's RFC determination. In addition, the prior decision is not part of the certified administrative transcript in this case and is not available or appropriate for Court consideration. Finally, substantial evidence supports the ALJ's RFC determination based on the evidence reviewed and cited by the ALJ.

## V.    ANALYSIS

### A.    Effect of Prior ALJ's RFC Determination

Plaintiff's appeal is premised on the fact that the Plaintiff, although previously denied benefits,[2] was determined to have a "sedentary" RFC with certain additional

---

[2] This prior decision was attached as an exhibit to Plaintiff's Memorandum in Support of Appeal (R. Doc. 11-1). Both parties cite to this exhibit in their respective briefs. The previous decision was issued on December 18, 2009. The application for supplemental security income in the instant matter was filed over six and a half months later, on July 7, 2010. The disability onset date is December 19, 2009, the day following the prior adverse decision.

limitations.   Because Plaintiff has now turned 50 and therefore changed his age category to "closely approaching advanced age," he would be considered disabled under the previously determined RFC.

At the hearing, the ALJ only briefly mentioned the prior RFC determination. (Tr. 41).  She noted that she does not have to accept the prior RFC and that "he's had so many applications . . . he's just been trying to get these benefits from the time he was much younger." (Tr. 43).[3]

The ALJ's written decision also briefly mentions the prior determination.  "This is the claimant's sixth application for SSI benefits . . . The claimant's representative brought in the previous ALJ decision showing a residual functional capacity assessment for less than sedentary exertional activity, presumably, because the claimant is now 50 years old and would GRID out at age 50." (Tr. 18).  Although the ALJ was aware of the prior decision, she analyzed the medical evidence that was part of the record and concluded that "the current medical evidence does not support a sedentary exertional level." (Tr. 18).  The prior opinion denying benefits was not made part of the record.

In the decision, the ALJ conducted the required five step sequential process and made the appropriate findings of fact and conclusions of law.  The ALJ conducted a review of the medical evidence that was part of the record, evaluated Plaintiff's credibility and concluded that the Plaintiff had the RFC to perform light work except

---

[3] According to the prior decision, Plaintiff had previously filed five prior Title II applications and four prior Title XVI applications.

that he can never climb ladders, ropes or scaffolds and can only occasionally stoop, kneel, crouch and crawl. (Tr. 15-19).

Plaintiff argues that because the prior ALJ found that Plaintiff had a sedentary RFC with limitations, the subsequent finding of a light RFC with limitations is unsupported by substantial evidence.[4] As set forth above, there is no overlap between the adjudicated period covered in the prior RFC determination and the adjudicated period covered in the current RFC determination.

The Social Security Administration treats a subsequent disability application involving a non-adjudicated period as a separate determination requiring de novo review and an independent evaluation of the facts and the evidence. *See* AR 00-1(4), 2000 WL 43774, at *3 ("SSA does not consider prior findings made in the final determination or decision on the prior claim as evidence in determining disability with respect to the unadjudicated period involved in the subsequent claim."). The ALJ here, consistent with the above process, conducted an independent evaluation of the evidence in the record, determined Plaintiff's RFC based on that record and ultimately concluded that Plaintiff was not disabled.

Plaintiff urges this Court to require proof of medical improvement through "new evidence" prior to finding a claimant has a higher residual functional capacity in a subsequent claim for benefits following a previous denial. (R. Doc. 11 at 12-14). The "medical improvement standard," however, applies only to those cases in which a

---

[4] Plaintiff argues that the current determination was "based on the same evidence" and that "the sole relevant difference of fact between the prior and current claims is that [Plainitff] turned 50 year old." (R. Doc. 11 at 8).

claimant has been found eligible for benefits. *See, e.g.*, 42 U.S.C. § 1382c(a)(4)(A)(i)(I) (defining medical improvement standard for termination of existing SSI benefits); 20 C.F.R. § 416.994(b) (prior award of SSI benefits may be terminated upon showing of "medical improvement"); *Griego v. Sullivan*, 940 F.2d 942, 943-44 (5th Cir. 1991) (explaining medical improvement standard applicable to termination of existing benefits).

Some courts outside of this circuit, however, have found that res judicata bars the Commissioner "from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed . . . in an earlier proceeding." *Lively v. Sec'y of Health and Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1999) ("evidence, not considered in the earlier proceeding, would be needed as an independent basis" to show claimant's impairment sufficiently improved to warrant a higher RFC than previously determined); *see also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) ("Absent an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." The SSA does not have "unfettered discretion to reexamine issues previously determined absent new and additional evidence."); *Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir. 1988) ("The first administrative law judge's findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings.").

As of this Order, it does not appear that the Fifth Circuit has addressed this issue directly.  Nonetheless, district courts in our circuit have cited *Lively*, *Drummond* and *Chavez* with approval. *See Gobert v. Astrue*, No. 12-2103, 2014 WL 31254, at *9

(W.D. La. Jan. 3, 2014) ("the principal [sic] of res judicata explained in Lively applies to the Commissioner's final decisions"); *Chapa v. Astrue*, No. 12-9, 2012 WL 4797117, at *14 (S.D. Tex. Oct. 8, 2012) (citing *Lively* as support for affirming "subsequent" and contradictory step 4 finding because it satisfied substantial evidence standard where it was based on "new evidence"); *Shelton v. Astrue*, No. 08-403, 2011 WL 1234910, at *9 (E.D. Tex. Jan. 31, 2011) ("*Lively's* reasoning is pertinent and persuasive here."), *adopted by* 2011 WL 1191946, at *1 (E.D. Tex. March 30, 2011) ("While *Lively* does not bind district courts in the Fifth Circuit, it is persuasive. Further, decisions in the Sixth, Seventh, and Eighth Circuits . . . consistently recognize that *res judicata* can be employed offensively by social security claimants."). Plaintiff describes the "circumstances" in *Lively* and its progeny as "identical" to his own and suggests they dictate the outcome of his appeal. (R. Doc. 11 at 10). The Court does not agree.

To begin, the Court declines Plaintiff's request to adopt the holdings of *Lively*, *Drummond* and *Chavez* and notes that these cases are not binding on this Court. And while the Court agrees that the reasoning in these cases is persuasive, these cases are distinguishable. Unlike *Shelton* or *Lively*, where the adjudicated periods were either the same or two weeks apart, Plaintiff's two applications concerned different time periods. Plaintiff's first application was denied on December 18, 2009 and the adjudicated period for his subsequent application — July 7, 2010 to August 19, 2011 — did not overlap with his previous application. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996) (Rejecting the argument that the "first ALJ's findings established"

claimant's "maximum [RFC]—at that time and forever more" because the first "was a binding determination . . . for that time period. It has no effect, however, on an application . . . for a subsequent time period."); *Pulliam v. Sullivan*, 769 F. Supp. 1471, 1477 (N.D. Ill. 1991) (Res judicata was inapplicable because "the two claims are distinct and unrelated by reason of the non-overlapping time periods of disability. . . . [E]arlier findings bar reconsideration only of Pulliam's condition" during that time period and "do not bar consideration of his condition" at a later date.).

Additionally, this record omits portions of the previous record, as discussed below, and   contains additional reports from consultative examiner, Dr. Lance Caulfield (Tr. 159-61) and non-examining consultant, Dr. Charles Lee (Tr. 50-51, 164). This evidence, not considered in the earlier proceeding, constitutes the "independent basis" referenced in *Lively* to support a new RFC determination.  In other words, res judicata does not apply because the ALJ's inconsistent RFC finding "was not a 're-evaluation' of the evidence, but rather an independent consideration of [Plaintiff's] eligibility at the time of [his] second application." *Rucker*, 92 F.3d at 495 (rejecting claimant's res judicata argument and reliance on *Lively* where "the second ALJ considered Rucker's disability status only for the period *after* . . . the Commissioner denied her first application"); *see also Hardy v. Chater*, 64 F.3d 405, 407 (8th Cir. 1995) (res judicata did not bar ALJ's step 4 finding that contradicted prior decision because ALJ considered new evidence; he "did not reevaluate[]" evidence weighed in prior decision); *but see Shelton*, 2011 WL 1234910 at *9 ("No new evidence . . . was before ALJ Meyer. Absent such evidence, he . . . w[as] bound by the two earlier, sedentary

12

[RFC] determinations . . . ."). And so, res judicata did not bar the ALJ from finding Plaintiff had a higher RFC than previously determined based on the record before her.

Having determined res judicata does not affect Plaintiff's current application for benefits, the Court turns to whether the Commissioner's decision is legally sound and supported by substantial evidence.

## B.    Substantial Evidence

The ALJ found Plaintiff's "allegations of pain and dysfunction . . . not fully credible" because Plaintiff: (1) "has received no treatment since the last decision;" (2) "has seen no doctor because he states he cannot afford it;" and (3) only "takes over-the-counter medications." (Tr. 18). She explained the "only objective evidence is a . . . lumbar CT scan, which was considered in the previous decision." (Tr. 18, 158). Without naming medical consultant, Dr. Charles Lee, or indicating that Lee did not examine Plaintiff, the ALJ adopted his RFC assessment because her "[r]eview of the file indicate[d] that the evidence support[ed]" it. (Tr. 18, 50-51, 164). Ultimately, the ALJ concluded that the "current evidence does not support a sedentary exertional level." (Tr. 18). Instead, the ALJ found Plaintiff had the "residual functional capacity to perform light work . . . except he can never climb ladders, ropes or scaffolds and can only occasionally stoop, keel [sic], crouch and crawl." (Tr. 15). After reviewing the record, the Court finds the ALJ's decision is not supported by substantial evidence.

Plaintiff's lack of treatment and prescribed medications were neither sufficient nor permissible bases for the ALJ to determine "that the claimant's back problems are

not as limiting as he alleges." (Tr. 18, 41, 42).[5]  Plaintiff offered uncontroverted testimony that he could not afford medical treatment, is unable to pay his outstanding medical bills, has been turned away by his medical providers, and has no transportation. (Tr. 30, 37-38, 41-42).[6]  A claimant's "inability to afford" treatment "should not be used to show" he or she is not disabled. *Sanders v. Apfel*, 136 F.3d 137, *1 (5th Cir. 1998) (magistrate judge erred in not considering "claimant's poverty"). Social Security Ruling 96-7P requires an ALJ to consider, as part of the credibility assessment, whether a claimant's lack of treatment is explained by an inability to afford medical care. SSR 96-7P, 1996 WL 374186, at *8 (July 2, 1996).

    To the extent the ALJ based her credibility assessment on Plaintiff's lack of treatment, prescriptions and objective medical evidence, the credibility assessment is

---

[5] The decision mentions Plaintiff "has been treated at the Charity Hospital in his area." (Tr. 18). This contention is not supported by the record, which does not contain any medical evidence of back, leg or knee treatments received at a local charity hospital.  The ALJ also inconsistently explained at the hearing that "if he doesn't have the money, then he should be seen at the charity clinics." (Tr. 42).  Not only is the ALJ's statement in her decision unsupported by the record, it ignores Plaintiff's testimony that he cannot keep appointments because he does not have transportation. (Tr. 37). Plaintiff's attorney also corroborated his inability to obtain treatment due, in part, to his lack of transportation and explained that he was unable to keep appointments scheduled at her law office. (Tr. 41, 42). *See Eason v. Chater*, 951 F. Supp. 1556, 1562 (D.N.M. 1996) (The ALJ must consider if claimant's excuse – lack of funds and transportation – "for not seeing a psychiatrist was justified." If it was, claimant "should not be penalized. A social security claimant will not be penalized for failing to seek treatment that [he] cannot afford.").

[6] During the hearing, the ALJ explained her view to Plaintiff: "Sir, if your back was hurting so bad, you would have gone to the doctor, and they would have given you something better than just over-the-counter medications." (Tr. 38).  Plaintiff responded: "They sending me bills, and I can't pay them . . . last week St. Helena Parish [] wouldn't see me because I owe them money. They sent me home." (Tr. 38.). The ALJ did not ask any follow up questions concerning Plaintiff's financial situation or transportation issues.  Also and without questioning Plaintiff about any costs associated with his smoking habits, the ALJ noted that people sometimes "giv[e]" him cigarettes and suggested: "tell them to give you money instead. You save it up, you go to the doctor. Simple." (Tr. 42). *See Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011) (credibility assessment not supported by substantial evidence where ALJ "summarily dismissed Eskew's explanation for not taking prescribed medication simply by noting her ability to buy cigarettes during that time – even though the record contains no information about either the price of her medication or the cost of her cigarette habit").

not supported by substantial evidence. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("To a poor person, a medicine that he cannot afford to buy does not exist."); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003) (rejecting ALJ's "statement that '[i]t is reasonable to assume that if [Newell] was experiencing the degree of pain and functional limitation which she has alleged that she would have sought medical treatment'" where record showed claimant could not afford treatment); *Miranda v. Barnhart*, 205 F. App'x 638, 642 (10th Cir. 2005) (lack of treatment not sufficient evidence to find claimant not credible where claimant could not pay for treatment); *Madron v. Astrue*, 311 F. App'x 170, 178-79 (10th Cir. 2009) (claimant's "failure to pay for an MRI is not substantial evidence of overstated pain" where evidence showed claimant could not afford MRI); *Nicaragua v. Colvin*, No. 12-2109, 2013 WL 4647698, at *8 (N.D. Tex. Aug. 29, 2013) (to the extent the credibility finding was based on claimant's failure to obtain treatment, it was "not supported by the record," which was "replete with references to Plaintiff's inability to afford treatment.").

Next, the RFC assessment is not supported by substantial evidence because the record lacked sufficient evidence for the ALJ to make an informed decision as to Plaintiff's functional limitations.  While the claimant has the burden of proving disability, the ALJ has an equally important duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits.  If the ALJ does not satisfy his duty, his decision is not substantially justified." *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (vacating and remanding "for the ALJ to determine Boyd's eligibility for

15

benefits based on a record accurately reflecting all of Boyd's impairments and the degree of their severity"). However, remand is only warranted where the claimant "shows prejudice from the ALJ's failure to request additional information." *Newton*, 209 F.3d at 458 (claimant was prejudice where "additional evidence could have been produced, if requested" but ALJ "faced with . . . an incomplete medical history" and "without obtaining the supplemental information, made medical determinations as to claimant's abilities to do specific jobs"). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). In other words, the decision "is not supported by substantial evidence if the administrative law judge does not have before him sufficient facts on which to make an informed decision." *Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981).

The record evidence is scant, at best, and as the ALJ explained during the hearing: "All of the evidence is already, you know, from the previous decision." (Tr. 41). "The only objective evidence is . . . a lumbar spine CT scan, which was considered in the previous decision." (Tr. 18, 158). The current evidence from the previous decision consists of a January 14, 2009 CT scan of the lumbar spine (Tr. 158) and the report of internist and consultative examiner, Dr. Catherine Cotterman (Tr. 133-37). Cotterman's final report discusses x-rays taken of the left and right knees and of the

16

lumbar spine as authorized by the Administration. (Tr. 136).[7] Despite the report being
in the record and the Administration's knowledge of the x-rays, Cotterman's report and
x-rays were not available for review by the current consultative examiner, Dr. Lance
Caulfield, and her x-rays were not provided to the non-reviewing state medical
consultant Dr. Charles Lee.

Dr. Lance Caulfield conducted the only recent examination of Plaintiff. (Tr. 159-
61). Caulfield explained in his report that Plaintiff "does appear to have significant
back and leg problems but he has not had a workup in quite some time, is on no
medications, and his diagnosis is somewhat in question." (Tr. 160). Caulfield advised
that Plaintiff "likely needs orthopedic evaluation for definitive diagnosis and likely
MRI studies before treatment options could be determined. This will also determine
his functional ability." (Tr. 160). In her decision, the ALJ omits this final conclusion
of Dr. Caulfield.

The Regulations permit the ALJ to order a consultative examination when
warranted. *See* 20 C.F.R. § 416.917. In fulfilling his or her "duty to conduct a full and
fair inquiry," the ALJ is "not required to order a consultative examination unless the
record establishes" one is "necessary to enable the administrative law judge" to make
"an informed decision." *Ford*, 659 F.2d at 69 (remanding to obtain psychiatric
consultative exam where record indicated psychiatric impairment but lacked sufficient
objective evidence to make informed decision). "It is reversible error for an ALJ not to

---

[7] Prior to her exam, the record shows Cotterman was authorized and asked to perform the following
tests: (1) lumbrosacral, 2 views with interpretation and report; (2) right knee, 2 views with interpretation
and report; and (3) left knee, 2 views with interpretation and report. (Tr. 132).

order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) ("the ALJ failed to order a consultative examination by an orthopedist even though the SSA's consulting doctor recommended such an evaluation").

Despite Dr. Caulfield's advisement that further orthopedic testing was needed, no further tests were ordered by the ALJ who failed to mention Dr. Caulfield's advisement in her decision.  Dr. Caulfield's report also does not indicate whether he was provided with or reviewed the January 14, 2009 Lumbar CT scan, Dr. Cotterman's January 24, 2009 report or the x-rays reviewed by Cotterman.  Based on the lack of objective evidence, Dr. Caulfield gave no opinion of Plaintiff's functional abilities. *See Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008) ("the ALJ, given his duty to develop the record, should have requested that the MRI Report be supplied, rather than simply stating in his decision that "there was no report of findings" in the record").

Where a claimant, who cannot afford treatment, lacks his own medical evidence and a consulting examiner — after noting "significant back and leg problems" (Tr. 160) — "recommends that a claimant's record be augmented by objective medical evidence, an ALJ skirts his affirmative duty to develop a full and fair record by not ordering the taking of objective medical evidence, such as an MRI or x-rays." *Jenkins v. Colvin*, 2013 WL 3465190, *5 (S.D. Ala. July 10, 2013) (citing *Ford*, 659 F.2d at 69 (5th Cir. 1981); *Turner v. Califano*, 563 F.2d 669 (5th Cir. 1977)).  The ALJ, therefore, failed to "ensure that [her] decision [was] an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). *See also Jessee v. Barnhart*, 419 F. Supp. 2d

18

919, 933 (S.D. Tex. 2006) (even without burden of proof, ALJ must fully and fairly develop record and ALJ's failure to do so where additional medical testing was needed constituted reversible error); *Sims v. Astrue*, No. 09-366, 2010 WL 2952686, at *4-5 (M.D. Ala. July 26, 2010) (lack of current MRI or x-ray studies created evidentiary gap concerning claimant's lumbar degenerative disc disease, which medical expert pointed out, triggered ALJ's duty to further develop record and failure to do so was reversible error).

This lack of evidence was then used by the ALJ to support her denial of Plaintiff's application. (Tr. 18) (Claimant "has received no treatment since last decision" and "only objective evidence" is lumbar CT scan). Given that the lack of record evidence is a product of the plaintiff's uncontroverted inability to afford treatment and the ALJ's failure to fully and fairly develop the record, it cannot be used as a basis to support the ALJ's decision. *See Burger v. Astrue*, 282 F. App'x 883, 884-85 (2d Cir. 2008) (where lack of objective evidence stems from claimant's inability to afford treatment, ALJ must further develop record rather than base denial on lack of objective evidence); *Bagwell v. Astrue*, No. 3-09, 2010 WL 1848933, at *2 (N.D. Miss. May 6, 2010) ("Just as it is error if the ALJ refuses to obtain a complete [CE] and then denies benefits because the record lacks evidence that the examination would have provided, the ALJ was not free . . . to proclaim that plaintiff failed to meet his burden because . . . 'there is no treating physician opinion of record. I have nothing.' If he 'had nothing,' he had the means to procure something.").

Beyond that, the ALJ erred in wholly adopting the RFC assessment of non-examining medical consultant, Dr. Charles Lee.  Generally, the ALJ is free to assign whatever amount of weight to the opinion of any physician for good cause. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (for ALJ to give deference to medical opinion it must be more than conclusory and must be supported by clinical and laboratory findings).  However, in this case, the ALJ adopted Dr. Lee's standard form RFC assessment which (1) contained no explanation of his findings and (2) was based on Dr. Caulfield's report which was inconclusive and (3) a record which had not been fully developed.  As such, the ALJ's reliance on Dr. Lee's RFC assessment was in error.  The non-examining opinion cannot constitute substantial evidence where it was based on an outdated and barren record. *Holifield v. Astrue*, 402 F. App'x 24, 26 (5th Cir. 2010) (ALJ has "good cause" to reject an opinion "where statements are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records."); 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability [because [t]he advisers' assessment

20

of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant.")

Finally, the ALJ ignored the few objective findings in the record and incorrectly stated that Plaintiff had full range of motion and that no objective findings support his subjective complaints. (Tr. 18). To the contrary, Plaintiff exhibited decreased range of motion in the lumbar spine during both Dr. Cotterman's (Tr. 135) and Dr. Caulfield's (Tr. 160) exams. Indeed, consistent with Plaintiff's severe impairment of degenerative disc disease, Plaintiff's range of motion noted by Dr. Caulfield, Plaintiff's most recent examiner, had worsened since Dr. Cotterman's exam. Dr. Caulfield also noted that Plaintiff exhibited "pain" and "crepitation" with range of motion in his knees, consistent with his allegations. (Tr. 160). *Jones v. Astrue*, No. 09-3095, 2011 WL 1100238, at *4 n.2 (S.D. Tex. March 1, 2011) ("Crepitus, or crepitation, is a noise or vibration produced by rubbing bone or irregular degenerated cartilage surfaces together as in arthritis and other conditions." (quotations omitted)); *Brinkley v. Astrue*, 695 F. Supp. 2d 269, 280 (D.S.C. Feb. 19, 2010) (crepitation of the knee is "supportive" of arthritis); *Mathis v. Astrue*, No. 08-691, 2010 WL 2540737, at *4 (N.D. Tex. May 28, 2010) ("crepitation of the knee consistent with osteoarthritis").

## V.    CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision be **VACATED** and Plaintiff's appeal **REMANDED** for further proceedings consistent with this Order.

Baton Rouge, Louisiana, this 31st day of March, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**